# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON ROBOTICS, LLC, et al.,        :
                                    :
                   Plaintiffs,  :   CIVIL ACTION
                                    :
      v.                            :   NO. 09-cv-1819
                                    :
ITOCHU INTERNATIONAL, INC., et al.,:    CONSOLIDATED WITH
                                    :
                   Defendants. :    NO. 09-cv-4123


## MEMORANDUM & ORDER

Before this Court are Defendants' Motion to Amend/Correct the Judgment (Doc. No. 169), Plaintiffs' Response in Opposition thereto (Doc. No. 178), Defendants' Reply in further support thereof (Doc. No. 180), the Supplemental Briefs of Defendants (Doc. No. 186) and Plaintiffs (Doc. No. 187), and Defendants' Reply to Plaintiff's Supplemental Brief (Doc. No. 188). Additionally, before the Court are Plaintiffs' Motion to Amend Judgment (Doc. No. 170) and Defendants' Response thereto (Doc. No. 177). For the reasons set forth in this Memorandum, the Court hereby ORDERS as follows:

1. Plaintiffs' Motion to Amend Judgment (Doc. No. 170) is GRANTED as unopposed. It is hereby ORDERED that the ordering paragraph of the civil judgment entered on June 10, 2013 in Civil Case No. 2:09-cv-01819 (Docket No. 160) is amended as follows: "IT IS ORDERED that Judgment be and the same is entered in favor

1

of Medsurg Specialty Devices, Inc. and against Devon Robotics, LLC in the amount of $726,510."

2. Prejudgment interest is hereby awarded to Medsurg Specialty Devices, Inc. in Civil Case No. 2:09-cv-01819 in the amount of 6% per annum, or $206,363.91.[1]

3. It is FURTHER ORDERED that JUDGMENT be and the same is hereby entered[2] in Civil Case No. 2:09-cv-04123 in favor of Plaintiffs and against Defendants in the following amounts: (1) $4,000,000.00 plus $1,973,110.90 in accrued interest as against Devon Robotics LLC; (2) $5,000,000.00 plus $1,824,444.20 in accrued interest jointly and severally as against Devon Robotics, LLC, Devon Health Services, Inc., and John A. Bennett, M.D..

4. Reasonable attorneys' fees in the amount of $561,367.71, as well as costs in the amount of $65,834.32, are awarded to Defendant ITOCHU International, Inc., jointly and severally as against Devon Robotics, LLC, Devon Health Services, Inc., and John A. Bennett, M.D. under the terms of the loan and Guaranty in Civil Case No. 2:09-cv-04123. Plaintiffs' request for oral argument on the same is DENIED.

---

[1] All interest awards herein are calculated as of September 27, 2013.

[2] Plaintiffs oppose the entry of final judgment in Civil Case No. 09-4123 based on the pendency of their Motion for Judgment Notwithstanding the Verdict, For New Trial, Or, In the Alternative, To Amend the Judgment (Case No. 09-1819, Doc. No. 173). This argument is now moot, given that the Court has resolved these motions (Case No. 09-1819, Doc No. 183).

It is further ORDERED that this Judgment is and shall be the final disposition of all claims and counterclaims in Civil Actions Nos. 2:09-cv-01819 and 2:09-cv-04123.

## II. BACKGROUND

The facts of this case are well known to the parties and the Court. Therefore, the Court will only discuss facts relevant to this motion.

In April 2009, ITOCHU International Inc. ("ITOCHU") filed Civil Case No. 09-3705 against Devon Robotics, LLC ("Devon") in the Southern District of New York. ITOCHU sought "compensation for Devon's breach of contract in connection with a $4 million Line of Credit and a $5 million Letter of Credit provided by ITOCHU." Case No. 09-3705 (S.D.N.Y.),(Complaint at 1)(Doc. No. 1). The case was transferred, as Case No. 09-4123, to this Court in June 2009.

Also in April 2009, Devon filed Civil Case No. 09-1819 against ITOCHU in this Court, alleging tort and contractual claims against ITOCHU.

The two cases were consolidated under Case No. 09-1819 in December 2009. In August 2012, this Court granted Summary Judgment (Case No. 09-1819, Doc. No. 97) to ITOCHU on its breach of contract claims under the Loan and Security Agreement ("LSA" or "loan") and Guaranty Agreement ("Guaranty"). The Court held that Devon was obligated to repay the $4 million loan, any

outstanding portion of the $300,000 down payment, as well as $5 million under the Guaranty agreement, to ITOCHU. The Court subsequently awarded interest and attorneys' fees to Plaintiffs pursuant to the contracts in question, but deferred calculation of the fees until such time as the judgment in Case No. 09-4123 was final (Case No. 09-1819, Doc. No. 103).

After consolidation and partial summary judgment, the remaining breach of contract claim in Case No. 09-1819 was tried before a jury. The jury rendered a verdict on June 7, 2013, and awarded damages in the amount of $726,510, for Defendant Medsurg Specialty Devices, Inc. ("Medsurg") and against Plaintiff Devon.

On June 21, 2013, Defendants Itochu and Medsurg filed the instant Motion to Amend/Correct the Judgment, which requests amendments relating to the jury verdict as well as the loan and Guaranty judgment.

## III. STANDARD OF REVIEW

Under FRCP 59, a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59. "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)(citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d.

Cir. 1995)). Defendants have properly made their arguments under Rule 59(e), as opposed to Rule 54. Rule 59 encompasses the request for prejudgment interest, <u>Rosen v. Rucker</u>, 905 F.2d 702, 705 (3d Cir. 1990)(citing <u>Osterneck v. Ernst & Whinney</u>, 489 U.S. 169, 175 (1989)), as well as the request for contractual attorneys' fees and costs. Fed. R. Civ. P. 54 Advisory Committee's note (1993 Amendments) (Rule 54 "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract.")

**IV. DISCUSSION**

The Court will proceed first by examining ITOCHU's request for prejudgment interest on the damages awarded by the jury in Case No. 09-1819. The Court will then examine ITOCHU's request for interest accrued on the loan and Guaranty in Case No. 09-4123, and finally address the multiple sub-issues in ITOCHU's request for attorneys' fees and costs pursuant to the same loan and Guaranty.

**A.     PREJUDGMENT INTEREST ON DAMAGES AWARDED BY THE JURY**

The Court finds that Medsurg is entitled to prejudgment interest at the statutory rate of 6% per annum on its jury award of $726,510.[3] "Under Pennsylvania law, eligibility for prejudgment

---

[3] This court has previously held that the Medsurg Distribution Agreement, the basis for the contractual claim decided by the jury in Case No. 09-1819, expressly provides that it is governed by the laws of the Commonwealth of Pennsylvania. Case No. 09-1819, Memorandum and Order, 76 (August 23, 2012) (Doc. No. 97).

interest in contract actions is governed by the Restatement (Second) of Contracts § 354 . . . Thus, under Pennsylvania law, where a plaintiff prevails in a contract action . . . prejudgment interest is available as a matter of right starting from when the amount due under the contract was initially withheld." <u>Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.</u>, 609 F.3d 143, 172 (3d Cir. 2010). The statutory rate of "six per cent per annum," 41 Pa. Stat. Ann. § 202 (West 2013), is recoverable even when a party's right to payment of interest is not specifically addressed by the terms of a contract. <u>TruServ Corp. v. Morgan's Tool & Supply Co.</u>, 39 A.3d 253, 263 (Pa. 2012).

Plaintiffs aver that the language of the MDA precludes Medsurg from receiving interest. Although Pennsylvania law allows the right to prejudgment interest to be modified by contract, <u>see</u>, <u>e.g.</u>, <u>Philadelphia Hous. Auth. v. CedarCrestone, Inc.</u>, 562 F.Supp.2d 653, 658-59 (E.D.Pa. 2008), paragraph 16 of the MDA contains no such explicit modification or waiver of the right to prejudgment interest.[4] The Court is not persuaded by Plaintiffs' argument that prejudgment interest constitutes "incidental, consequential, or special damages" and is thus precluded by

---

[4] Plaintiffs' cases can be distinguished. Unlike the text of the MDA, the text of the contracts in <u>Philadelphia Hous. Auth. v. CedarCrestone, Inc.</u>, 562 F.Supp.2d 653 (E.D.Pa. 2008)(contract provided that interest "shall not be payable")and <u>Arway Linen & Unif. Rental Serv. v. N. Phila. Sullivan's, Inc.</u>, 2013 Phila. Ct. Com. Pl. LEXIS 205 (Pa. C.P. 2013)(liquidated damages were to be the "sole and exclusive recovery") explicitly excluded prejudgment interest.

paragraph 16 of the MDA.[5] <u>See</u> Restatement (Second) of Contracts § 354 (INTEREST AS DAMAGES), comment a. Thus, the Court modifies its judgment to grant prejudgment interest to the sum awarded to Medsurg by the jury, in the amounts of $141,001.64 for the three $160,000 commissions that were due on November 5, 2008, and in the amount of $65,362.27 for the $246,510 Allegiance Health commission that was due on April 28, 2009.

## B.   INTEREST ACCRUED ON THE LOAN AND LETTER OF CREDIT

Pursuant to the Court's November 20th, 2012, Order (Case No. 09-1819, Doc. No. 57), and given that Defendants' request for interest is unopposed by Plaintiffs,[6] the Court awards interest in the amounts of $1,824,444.20 under the terms of the $5 million Guaranty Agreement, in addition to $1,973,110.9 under the terms of the $4 million Loan and Security Agreement and accompanying

---

[5] Again, the cases cited by Plaintiffs are inapposite. <u>Frank B. Bozzo, Inc. v. Elec. Weld Div. Of Ft. Pitt Div. Of Spang Industries, Inc.</u>, 498 A.2d 895, 897-98 (Pa. Super. Ct. 1985) addresses "incidental damages" in the context of the Uniform Commercial Code, which is not applicable to the instant case. In <u>Alvord-Polk, Inc. v. F. Schumacher & Co.</u>, 1992 U.S. Dist. LEXIS 3562 (E.D. Pa. Mar. 19, 1992), the claim for principal and interest was made under the New Jersey Commercial Code, not Pennsylvania law. Lastly, in both <u>Edward Klein Truck & Heavy Equip. Co. v. Pitman Mfg. Co.</u>, 512 F.Supp. 101 (W.D. Pa. 1981) and <u>Delaware Valley Equip. Co. v. Granahan</u>, 409 F.Supp. 1011 (E.D. Pa. 1976), prejudgment interest was awarded. Because the Court finds the MDA's exclusion of incidental, consequential, and special damages inapplicable, it need not consider whether Devon's breach of its obligation to pay commissions was willful or intentional.

[6] Plaintiffs' Memorandum of Law In Opposition To Itochu and Medsurg's Motion to Amend Judgment (Case No. 09-1819, Doc. No. 178) argues for a reduction in attorneys' fees and costs and opposes an award of prejudgment interest, but does not address interest accrued under the terms of the Loan and Security Agreement or the Guaranty. Accordingly, the Court has based its award on Defendants' unopposed mathematical calculations as set forth in Section II(C) of Defendants' Motion to Amend the Judgment (Case No. 09-1819, Doc. No. 169).

Promissory Note.

**C.   ATTORNEYS' FEES AND COSTS ON THE LOAN AND LETTER OF CREDIT**

The "American Rule" provides that "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 130 S.Ct. 2149, 2156-57 (2010). This Court has previously found that attorneys fees are due to Plaintiffs under the terms of the loan and Guaranty (Case No. 09-1819, Doc. No. 103). The loan and Guaranty are governed by New York law;[7] additionally, the Third Circuit has held that "for Erie purposes, a party's asserted right to attorneys' fees is a matter of substantive state law." Chin v. Chrysler LLC, 538 F.3d 272, 279 (3d Cir. 2008).

New York law provides that provisions in contracts for payment of attorneys' fees are valid and enforceable. Stewart Information Services Corp. v. Corporatair LLC, 951 N.Y. S.2d 83 at *7, 35 Misc. 3d 1222(A), (N.Y. Sup. Ct. 2012) (quoting Roe v. Smith, 278 N.Y. 364 (N.Y. 1938)). Under New York law, "when a

---

[7] This Court has previously held that these contracts expressly provide that they are governed by, and are to be interpreted in accordance with, New York law. Case No. 09-1819, Memorandum and Order, 62 N. 24 (August 23, 2012)(Doc. No. 97). See also AMG Nat'l Trust Bank v. Ries, 2007 U.S. Dist. LEXIS 68083, *17 (E.D. Pa. 2007)(Pennsylvania courts "honor the intent of contracting parties and enforce choice of law provisions in contracts executed by them.") The application of New York law was not previously challenged by Plaintiff Devon, who now cites to New York, Pennsylvania, and federal law in its arguments regarding attorneys fees under the contracts. See (Plaintiffs' Memorandum of Law In Opposition To Itochu and Medsurg's Motion to Amend Judgment). The Court will now, as it has previously, apply New York law in interpreting provisions of the contracts.

contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." Curves Intern., Inc. v. Nash, 2013 WL 3872832, at *3 (N.D.N.Y. 2013)(citing F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987)). In order to prevent exorbitant fees, the Court should scrutinize the reasonableness of the arrangement. F.H. Krear & Co v. Nineteen Named Trustees, 810 F.2d at 1263. While an award of reasonable attorneys' fees pursuant to a contractual provision is within the discretion of the court, SO/Bluestar, LLC v. Canarsie Hotel Corp., 33 A.D.3d 986, 825 N.Y.S.2d 80, 82 (N.Y. App. Div. 2006), the fees must be awarded on a quantum meruit basis. Lou Halperin's Stations, Inc. v. Cross Petroleum Corp., 33 Misc. 3d 1227 (A), 939 N.Y.S.2d 741 at *6 (N.Y. Sup. Ct. 2011).

In calculating reasonable attorneys' fees, New York courts multiply the hours reasonably spent by counsel, as determined by the Court, by the reasonable hourly rate.[8] See, e.g., Mar Oil, SA

---

[8] The parties hotly debate the method by which this Court should determine reasonable attorneys' fees under the contracts at issue. While Defendants cite to cases discussing fees under contract provisions, Plaintiffs urge the court to apply the "lodestar" method typically employed under fee-shifting statutes. For example, Matter of Nathan Rahmey v. Blum, 466 N.Y.S.2d 350 (N.Y.App.Div. 1983), on which Plaintiffs heavily rely, discusses the analytical framework for attorneys' fees under the Civil Rights Attorney's Fees Awards Act, 28 U.S.C. §1988, a statute inapplicable to the instant case; the same statute is at issue in Hensley v. Eckerhart, 461 U.S. 424 (1983). The other cases cited by Plaintiffs are similarly focused on statute, not contract. See, e.g., Francis v. Atlantic Infiniti, Ltd., 950 N.Y.S.2d 608, 34

v. Morissey, 982 F.2d 830, 841 (2d Cir. 1993). The Court may then make adjustments based on case-specific circumstances. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. Of Elections, 522 F.3d 182, 186 (2d Cir. 2007). In making adjustments, the Court may look to specific factors such as "the time and labor required, the difficulty of the issues involved, and the skill and effectiveness of counsel," SO/Bluestar, LLC v. Canarsie Hotel Corp., 825 N.Y.S.2d at 82, as well as the "nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, and the results achieved." Bankers Fed. Sav. Bank FSB v. Off Broadway Developers, 224 A.D.2d 376, 377-78, 638 N.Y.S.2d 72 (N.Y. App. Div. 1996).

Though this Court has previously found there to be a right to attorneys' fees under the contracts at issue, it has not yet

---

Misc. 3d 1221 (A) (N.Y. Sup. Ct 2012)(claim for fees under New York's "Lemon Law"); UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007)(claim for fees under Employee Retirement Income Security Act of 1974); Buck v. Stankovic, 2008 U.S. Dist. LEXIS 65572 (M.D. Pa. 2008)(claim for fees pursuant to 42 U.S.C. § 1983). The "lodestar" method advocated by Plaintiffs was developed by Circuit courts and later adopted by the U.S. Supreme Court to calculate attorneys' fees in class-action lawsuits or under federal fee-shifting statutes such as civil rights laws. See Court Awarded Attorney Fees, 108 F.R.D. 237, 242 (1986)(Third Circuit Task Force explaining history of lodestar method).

However, courts applying New York law do not reserve the lodestar method for awarding fees only under statutory fee-shifting provisions, and in fact use the lodestar in contract cases. See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees, 81 F.2d 1250 (2d. Cir. 1987); Amerisource Corp. v. Rx USA Intern. Inc., 2010 WL 2160017 (E.D.N.Y. 2010); Campbell v. Mark Hotel Sponsor, LLC, 2012 WL 4360011 (S.D.N.Y. 2012); Curves Intern., Inc. v. Nash, 2013 WL 3872832, at *3 (N.D.N.Y. 2013). As such, this Court will apply lodestar principles and address the arguments of the parties regarding the reasonable fee, hours, and adjustments.

determined the scope of the fee-shifting provisions in those contracts. The interpretation of contract language is a question of law for the court, when that language is clear and unambiguous. <u>Reyes v. Metromedia Software, Inc.</u>, 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012)(quoting <u>Omni Quartz v. CVS Corp.</u>, 287 F.3d 61, 64 (2d Cir. 2002)). Whether or not the language is clear and unambiguous is also a question properly resolved by the court. <u>Id</u>. (quoting <u>Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.</u>, 472 F.3d 33, 42 (2d Cir. 2006)). Contract language is unambiguous "when it has a 'definite and precise' meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for difference of opinion." <u>Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.</u>, 716 F.3d 302, 313 (2d Cir. 2013)(quoting <u>John Hancock Mutual Life Ins. Co.</u>, 22 F.3d 458, 461 (2d Cir. 1994)).

The relevant language in the contracts is as follows:

The Loan and Security Agreement states that Devon Robotics shall pay "all reasonable costs and expenses incurred by Lender in connection with the enforcement of Lender's rights and/or the collection of any amounts which become due, the prosecution or defense of any action in any way related to this Agreement and the Notes." Loan and Security Agreement at 7.

The Guaranty Agreement similarly provides that Devon shall

pay, in addition to the principal, "all other costs incurred by [ITOCHU] in connection with, the Letter of Credit (including reasonable attorneys' fees incurred in collecting or attempting to collect any of the Guarantors' obligations to [ITOCHU]). . . " Guaranty at § 1.1.

The Court finds the right to attorneys' fees under these contracts to be broadly written and open-ended with respect to costs and fees relating to the underlying agreements. See, e.g., Towers Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 524-5 (2d Cir. 1990)(finding that contract allowing "all expenses in connection with the Loan" was broad enough to cover litigation to recover funds placed in escrow under the contract). Under the plain language of the agreements, ITOCHU is entitled to "all" costs and expenses, as long as they were expended "in connection with" enforcement of ITOCHU's rights. The LSA contains additional language granting costs for litigating "any action in any way related" to the agreement. Importantly, though, both agreements cabin the award of attorneys' fees to those fees and costs that the Court finds to be "reasonable." The Court has the inherent authority to determine what constitute reasonable attorneys fees. See Amerisource Corp. v. Rx USA Intern. Inc., 2010 WL 2160017, at *9 (E.D.N.Y. 2010)(citing Orix Credit Alliance, Inc. v. Grace Indus., Inc., 261 A.D.2d 521, 521-22 (N.Y. App. Div. 1999)). In addition, the parties and Court agree that fees and costs are

recoverable for work in connection with ITOCHU's claims against
Devon stemming from Case No. 09-4123, and not other work.

### 1. Description of Work Underlying Attorneys' Fees

In order to make its award, "the court must possess
sufficient information upon which to make an informed assessment
of the reasonable value of the legal services rendered." S/O
Bluestar, LLC v. Canarsie Hotel Corp., 33 A.D. 3d 986, 988, 825
NY.S.2d 80, 82 (N.Y. App. Div. 2006)(internal citations omitted).
"There must be a sufficient affidavit of services, detailing the
hours reasonably expended . . . and the prevailing hourly rate
for similar legal work in the community." Id.; see also Gamache
v. Steinhaus, 7 A.D.3d 525, 527, 776 N.Y.S.2d 310, 312 (N.Y. App.
Div. 2004)(Finding that record did not establish reasonableness
of amount of hours billed because though "both attorneys
submitted brief summaries of their billable hours, they did not
submit contemporaneous time sheets or otherwise adequately
document how these alleged hours were accumulated.")

In its November 20, 2012 Order (Case No. 09-1819, Doc. No.
57), the Court requested that Plaintiffs present a "more
individualized breakdown of the fees by hour and by task." In
their Motion to Amend the Judgment (Case No. 09-1819, Doc. No.
169), Defendants ITOCHU and Medsurg appended a declaration of
Eric Laptook, ITOCHU International's Senior Vice President and
General Counsel, in addition to a 54-page summary of attorneys

that worked on the litigation, a general description of the tasks they completed, and the number of hours each billed. Finding this information insufficient, the Court then ordered Defendant ITOCHU to provide more detailed summaries, including at minimum more specific narratives describing tasks completed, the dates on which hours were billed, and the matter codes to which the entries were billed (Case No. 09-1819, Doc No. 184). Though the Court did not mandate ITOCHU to submit the bills received from counsel, ITOCHU voluntarily filed, under seal, the full unredacted invoices underlying its request for attorneys' fees (Case No. 09-1819, Doc. No. 186). These invoices provide ample evidence upon which to base an award of reasonable attorneys' fees.

### 2. Reasonableness of Hourly Rates

The Court will first consider whether the hourly fees charged by ITOCHU's counsel were reasonable. New York law requires that a reasonable hourly rate for an attorney be based on the "customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented." Gamache v. Steinhaus, 7 A.D.3d 525, 527, 776 N.Y.S.2d 310, 311 (N.Y. App. Div. 2004).

Plaintiffs contend that the hourly fees charged by defendants' counsel were "exorbitant and beyond the market

value," (Plaintiffs' Opposition to Motion to Amend Judgment at 10), and that Defendants should have retained local counsel in Philadelphia as opposed to in Washington, DC. Defendants respond that they retained Washington, DC counsel because the case was originally filed in New York, and that counsel's hourly rates are reasonable in that market. The Court finds it reasonable that ITOCHU retained Washington, DC counsel to litigate a case originally filed in New York. In fact, a decision to retain New York counsel also would have been reasonable, and may have resulted in even higher rates than those of counsel from Washington, DC.

In support of its assertion that the hourly rates charged by its attorneys are reasonable, ITOCHU submitted the following: a Declaration by Erik Laptook, Senior Vice President and General Counsel of ITOCHU International Inc., stating that based on his experience with law firms in Washington, DC, New York, and Philadelphia, "the hourly rates and costs charged . . . are reasonable and are not excessive or higher than average for any of those markets"; and a July, 2013 article from Law.com describing a study of in-house counsel, which found that the average hourly rate for partners in Washington, DC was $650 per hour, in New York was $755 per hour, and was $727 per hour for firms with more than 1,000 attorneys. ITOCHU's attorneys work at the Washington, DC office of McDermott Will & Emery, a firm that

employs just over 1,000 attorneys. The hourly fees for the 19 attorneys, paralegals, technical staff, and others that worked on the case range from $850/hr (partner) or $680/hr (partner) to $160/hr. Additionally, ITOCHU explains that the two highest-billing attorneys on the matter have over 30 and almost 20 years of experience, respectively.

Case No. 09-4123, which originally began as Case No. 09-3705 in the Southern District of New York and was later consolidated with Case No. 09-1819 in the Eastern District of Pennsylvania, had a complex factual backdrop and required extensive motion practice. The case lasted over four years and involved multiple claims. Given the ability and experience of the attorneys working for ITOCHU, the size of their law firm, the prevailing rates within the Washington, DC market, and the favorable results achieved by counsel, the Court finds the rates charged by Defendants' counsel to be reasonable.

### 3. Reasonableness of Hours Billed, and Their Appropriateness Under the Loan and Guaranty

The Court will next consider the reasonableness of the number of hours billed by ITOCHU's counsel, and whether or not they fall within the scope of the relevant agreements between the parties. Devon opposes a full award of the fees and costs requested by ITOCHU, which amount to $675,089 in attorneys' fees and $65,834.32 in associated costs. As discussed in greater detail below, Devon argues that some fees are unrelated to

16

ITOCHU's claims against Devon, certain time entry narratives are too vague to ascertain to which case they applied,[9] and other entries demonstrate excessive, duplicative, or redundant fees.

ITOCHU explains that its counsel recorded time related to the two cases under two different matter codes: 0016 and 0014. While matter code 0016 represents work performed to defend claims by Devon against Itochu, code 0014 represents work undertaken in relation to Itochu's claims against Devon on the loan and Guaranty. Only work performed under the latter matter code is recoverable under the contracts. After a review of the invoices submitted by counsel, the Court finds that ITOCHU's assertion that all the fees sought in its motion were recorded under code 0014 is correct.

### (a) <u>Reading documents and filings in the DeViedma action and produced by other parties</u>

Devon objects to 5.1 hours spent by ITOCHU's counsel reviewing pleadings and filings and discussing discovery in Devon's litigation against Gaspar DeViedma, 10 hours spent by counsel reviewing a document production by Health Robotics North America ("HRNA"), and 7.5 hours spent reviewing a Blazer contract. The Court finds fees for the DeViedma and HRNA work to

---

[9] Devon presents this argument in its Opposition to Motion to Amend Judgment (Case No. 09-1819, Doc. No. 178), which was filed prior to ITOCHU's Supplemental Brief in Support of Motion to Amend Judgment (Case No. 09-1819, Doc. No. 186). The Supplemental Brief includes the invoices submitted by counsel to ITOCHU and remedies to a large extent the issue of vagueness noted by Devon.

be recoverable under the agreements at issue.

Earlier in this litigation, Devon sought to connect Mr. DeViedma's actions to the loan and Guaranty. See Case No. 09-4123, (Def. Response in Opposition re Motion for Summary Judgment at 1) (Doc. No. 9)("ITOCHU presents this matter as a simple action on a note . . . However . . . the dispute between ITOCHU and Devon is considerably more complex . . . Devon is not obligated to pay because the draw on the Letter of Credit [by DeViedma] is improper."); see also id. at 4 ("[The DeViedma action] is related to the instant motion because DeViedma's actions contributed directly to the incurrence of the debt that ITOCHU seeks to enforce here.") Devon's arguments now are inconsistent with its previous position, and the Court will not reduce the award by the time spent reviewing DeViedma filings.

Moreover, Devon argued that it was forced to take loans from ITOCHU because negotiations regarding the Cytocare joint venture failed between Devon, ITOCHU, and Health Robotics of North America. See id. at 1-3, 9-10. The 10-hour document review covered this proposed but unconsummated joint venture. After a review of the invoices, the Court is satisfied that this document review was also in connection with the loan and Guaranty litigation, and will not result in reduction of the award.

However, the Court agrees that a review of the Blazer contract appears unrelated on its face to ITOCHU's collection

18

efforts, and reduces the award by 7.5 hours accordingly.

### (b) Efforts to dismiss Devon's claims

Devon next argues that 189.9 hours spent on dismissing Devon's counterclaims against ITOCHU in Case No. 09-4123 are "arguably unrelated" to ITOCHU's claims against Devon. The first of the contested entries was billed on June 21, 2009 and the last on September 25, 2009. ITOCHU replies that Devon "specifically fashioned its claims against ITOCHU as affirmative defenses to ITOCHU's claims against it, thereby requiring ITOCHU to defeat those claims in order to collect on its loans." Case No. 09-1819, (Def. Reply in Support of Motion to Amend the Judgment at 10) (Doc. No. 181).

The Court notes that there was likely significant overlap with regard to work ITOCHU's counsel performed to counter Devon's legal theories in Cases No. 1819 and 4123 (previously Case No. 09-3705 (S.D.N.Y)). Because the cases were not consolidated until December 2009, ITOCHU was until that time addressing similar legal theories put forth by Devon in two different fora. As explained by ITOCHU, Devon's affirmative defenses in Case No. 09-1819 were highly comparable to its claims against ITOCHU in Case No. 09-4123, thus forcing ITOCHU to move against the theories "not once but several times, because Devon asserted them both as counterclaims in ITOCHU's collection case and as separately-filed affirmative claims in Devon's affirmative Philadelphia case."

Case No. 09-1819, (Def. Reply in Support of Motion to Amend the Judgment at 13)(Doc. No. 181).

However, only work on the counterclaims or defenses, and not the affirmative claims, is recoverable. While filings for the two cases had to be drafted separately, much if not most of the underlying research, tactical decisions and accompanying discussions, as well as any associated document review, needed to be completed only once. Though ITOCHU avers that it "did not record and is not seeking recovery of fees to defend against Devon's [affirmative] claims [in Case No. 09-1819]," id. at 10, it provides no evidence as to how the hours necessary to address Devon's similar legal theories were apportioned between the two cases, and what percentage of the total fees accrued in addressing those legal theories were billed to matter code 0014. Without more information, the Court finds 189.9 hours to be excessive. Accordingly, the Court will reduce the award by 95 hours, or $39,552.21.

Devon also argues that the award should be reduced because ITOCHU does not distinguish between its defensive (Case No. 09-1819) and renewed affirmative (Case No. 09-4123) summary judgment motions in its invoices. Unlike the motion to dismiss, however, the underlying work for these motions was distinct and thus less fungible. The Court is persuaded that, by recording time to two different matter codes, ITOCHU has sufficiently distinguished its

efforts on these two motions. Yet the Court agrees - while noting
the *de minimis* impact of Devon's punctilious reading of the
invoices - that the time entry for 6/15/2011 on the 7/22/2011
invoice, which states, "[c]ompile declaration exhibits . . . for
counterclaims SJ" (Def. Supplemental Brief in Support of Motion
to Amend Judgment at 7/22/2011 entries) should be stricken. The
award is reduced by 0.6 hours ($181.53).

### (c)   Efforts regarding change of venue

Devon avers that 104.4 hours regarding "procedural matters
related to transferring Devon's case" are also arguably unrelated.
These "procedural matters" cover opposition to Devon's motion to
transfer Case No. 09-3705 from the Southern District of New York
to the Eastern District of Pennsylvania in June 2009 and
accompanying stay of the New York proceedings, as well as briefing
on ITOCHU's May 2009 motion to transfer venue in Case No. 09-4123
from the Eastern District of Pennsylvania to the Southern District
of New York. See (Def. Reply In Support of Motion to Amend the
Judgment at 10).

The Court finds fees for work related to one transfer motion,
but not both, to be recoverable. ITOCHU's efforts to prevent
transfer of Case No. 09-3705 (S.D.N.Y.) to the Eastern District of
Pennsylvania, and to keep the New York litigation active, were
absolutely in connection with the loan and Guaranty. However,
ITOCHU's motion to transfer Devon's breach of contract and other

claims in Case No. 09-1819 to Southern District of New York are not sufficiently related to the loan and Guaranty to be awarded. Because ITOCHU has not calculated for the Court how many hours were spent on each respective transfer motion, the Court will reduce the hours by half, or 52.2 hours ($16,183.72).

### (d)  Deposition of Mounir Rabbat

Devon asks the Court to reduce the award by $15,561.00, which represents the 53.4 hours ITOCHU's counsel spent preparing for and defending Devon's deposition of Mounir Rabbat. The deposition of Rabbat, Senior Vice President, COO, Enterprise Division, General Manager of Business Development Division of ITOCHU, took place on December 21, 2010. The interview occurred after ITOCHU's initial motion for summary judgment (Case No. 09-4123, Doc. No. 3), which was held in abeyance, yet before full briefing on summary judgment by all parties. Though Devon now asserts that the preparation of Mr. Rabbat's deposition is not related to ITOCHU's claims against Devon, during the litigation Devon argued that it entered into the contracts at issue based on ITOCHU and Mr. Rabbat's fraudulent misrepresentations. The Court explicitly addressed and rejected this fraud defense in its Summary Judgment Order (Case No. 09-1819, Doc. No. 97). Moreover, ITOCHU states that Mr. Rabbat's deposition was the only one which was recorded to code 0014; the remainder were billed to 0016, for which fees and costs are not sought. The Court's review of the invoices bear this out. The

award will not be reduced by the fees for preparing the deposition of Mounir Rabbat.

### (e) **Document-related tasks and factual investigation of Devon**

Devon next objects to 463.6 hours of document review, 2.3 hours of document management, and 63.2 hours of factual investigation of Devon entities. Devon does not explain specifically why it objects to these 529.1 hours, only that they "are more likely related to Devon's claims against ITOCHU" and attorney time for investigating facts common to Case No. 09-1819 and 09-4123 should be allocated between the two matter codes, and only fees for the latter should be recoverable. According to Erik Laptook, the Senior Vice President and General Counsel of ITOCHU, the bulk of ITOCHU's discovery efforts were billed to matter code 0016. (Def. Motion to Amend the Judgment Ex. 1 at 4)(Doc. No. 169). From May-August 2010, when most fact discovery took place, counsel recorded 1,334.80 hours in matter 0016 and only 164.2 hours in matter 0014. Id. at 4-5. The Court is persuaded, by this sworn declaration and its review of the invoices, that the factual investigation and document review that was completed under matter code 0014 was sufficiently related to collecting on the loan and Guaranty. The Court will not reduce ITOCHU's award accordingly.

### (f) **Creation of a Timeline**

Devon argues that 28.7 hours spent preparing a timeline of events relevant to litigation should be stricken because it could

23

cover the entirety of both cases, not just Case No. 09-4123. While

a litigation chronology can be considered a reasonable tool to

prepare ITOCHU's case, the Court finds 28.7 hours to be excessive

for a chronology that was only used internally to assist counsel.

Therefore, the Court reduces the award by 14.35 hours or

$4,496.62.

### (g) Excessive, Duplicative or Redundant Fees

Finally, Devon contends that many of the time entries

appear to be excessive, duplicative, or redundant, especially the

190 hours ($85,000) billed for ITOCHU's motion to dismiss, 89

hours ($37,000) motion to transfer venue, and 113.6 hours

($47,198.88) for filing a complaint. The Court has already

significantly reduced the fees associated with the motion to

dismiss and motion to transfer.

As to the complaint, while the Court acknowledges that ITOCHU

filed both a complaint and an amended complaint in Case No. 09-

3705 (S.D.N.Y.), both of which required significant research of

causes of action and strategic discussions, it nevertheless finds

113.6 hours to be excessive and reduces the award by 25%, or 28.5

hours ($11,799.72).

After a review of the invoices voluntarily submitted by

ITOCHU, the Court will reduce the award as a result of another

entry that it finds to be duplicative or redundant. See Bankers

Fed. Sav. Bank FSB, 224 A.D.2d at 378 (Courts are to consider "the

necessity" of the services provided). ITOCHU's invoices appear to list 53 hours spent on research and writing regarding procedures for executing a judgment under Pennsylvania law. (Def. Supp. Brief at 11/10/2009, 12/08/2009 entries). The Court finds these charges to be excessive, and reduces the award by 30 hours, or $8,850.

Moreover, the Court will not make an award for fees generated on ITOCHU's motion for contractual attorney's fees.[10] "A general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." Campbell v. Mark Hotel Sponsor, LLC, 2012 WL 4360011, at *3 (S. D. N. Y. 2012)(citing F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1266). Though it would be possible for a contract to contain such an allowance, doing so would require specific language, id., which is not present here. As such, the award is reduced by $30,000.

As outlined above, the Court reduces the number of hours for which fees will be awarded to ITOCHU. The reductions are as follows:

| ITOCHU's REQUESTED ATTORNEYS' FEES | $675,089.00 |
| --- | --- |

---

[10] After arguing vehemently that Rahmey v. Blum, 95 A.D.2d 294, 301 (N.Y. App. Div. 1983) does not apply to the instant case, Defendants later abruptly cite to Rahmey for the proposition that "[h]ours spent by counsel in preparing the fee litigation and in litigating a fee award are also compensable." However, the Rahmey rule is applicable only to statutory fee-shifting provisions, not contractual ones. Soberman v. Groff Studios Corp., 2000 U.S. Dist. LEXIS 10145 at *7 (S.D.N.Y. 2000).

| | |
|---|---|
| Review of Blazer invoice (reduced by 7.5 hours) | $2,657.50 |
| Efforts to dismiss Devon's claims (reduced by 95 hours) | $39,552.21 |
| Summary judgment work (reduced by 0.6 hours) | $181.53 |
| Efforts regarding change of venue (reduced by 52.2 hours) | $16,183.72 |
| Creation of a timeline (reduced by 14.35 hours) | $4,496.61 |
| Complaint (reduced by 28.5 hours) | $11,799.72I |
| Research on execution of judgment under PA law (reduced by 30 hours) | $8,850.00 |
| Fees for motion to amend (excised completely) | $30,000.00 |
| **AWARDED ATTORNEYS' FEES** | **$561,367.71** |

### 4.    Other adjustments

Finally, the Court turns to other adjustments required by the circumstances of the case. Plaintiffs argue that, because only Devon was a party to the LSA and Promissory Note, whereas Devon, DHS and John A. Bennett, M.D. ("Bennett") were parties to the Guaranty, ITOCHU's attorneys should have apportioned their time between these two instruments. Defendants reply that the tasks for which they seek costs are related to the collective litigation as a whole, in which Devon asserted most of its defenses against both instruments and briefed related motions jointly.

The Court finds that it was logical for counsel not to

apportion their time between the two instruments, because the litigation in Case No. 09-4123 related to both. In fact, at the summary judgment stage, Devon asserted defenses to both instruments simultaneously: first, that payment under the contracts was contingent upon a larger transaction with ITOCHU, and second, that Devon entered into these contracts based on ITOCHU's fraudulent misrepresentations. As such, entries by ITOCHU's counsel such as "work on reply brief in support of summary judgment based on Judge Joyner's feedback and Rule 16 conference" (Defendants' Supplemental Brief, Ex. 1 at 11/10/2009 entry) necessarily relate to both the LSA and Guaranty, which were both addressed in the parties' briefs on summary judgment.

Given that the nature of the legal work regarding the two instruments was highly intertwined - due in no small part to Devon's own arguments - to hold now that ITOCHU's counsel should have separately billed and completed tasks such as legal research, discussions, and drafting for each instrument would be to impose an unrealistic standard on their legal work.

Moreover, Devon's concern with the fair apportionment of fees between different parties is not an argument supporting reduction of those same fees. The Court's entry of an award against Devon, Devon Health Services and Bennett jointly and severally does not preclude allocation - in any proportion those parties see fit - of the burden of paying those fees among the parties themselves. The

Court will not reduce the award of attorneys' fees because time was not apportioned between the LSA and the Guaranty.

Lastly, ITOCHU requests $65,834.32 in related costs. Devon does not oppose these costs, and the Court finds them to be reasonable. The award will be adjusted upward accordingly.

## CONCLUSION

For the foregoing reasons, the Courts awards to Medsurg prejudgment interest in the amount of $206,363.91 on its jury award of $726,510. The Court awards interest accrued on the $4 million Loan and Security Agreement and accompanying Note in the amount of $1,973,110.90 as against Devon, and on the $5 million Guaranty in the amount of $1,824,444.20 as against Devon, Devon Health Services, Inc. and Bennett, jointly and severally. The Court declines to award ITOCHU all of its requested counsel fees, instead finding $561,367.71 to be an appropriate figure. In addition, the Court awards $65,834.32 in costs to ITOCHU. Counsel fees and costs are awarded as against Devon, Devon Health Services, Inc. and Bennett, jointly and severally. An Order follows.