```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ITOCHU INTERNATIONAL, INC.,      :
                                 :    CIVIL ACTION
                     Plaintiff,  :
                                 :    No. 09-cv-4123
     v.                          :
                                 :    CONSOLIDATED WITH
DEVON ROBOTICS, LLC, ET. AL.,    :
                                 :    No. 09-cv-1819
                     Defendants. :
```

**MEMORANDUM**

**JOYNER, J.**                                          **OCTOBER 8, 2014**

Before the Court are Defendants Devon Robotics, LLC, Devon Health Services, and John A. Bennett, M.D.'s ("Devon") Motion to Quash the Subpoenas Issued by ITOCHU International, Inc. (Doc. No. 268), and ITOCHU's Opposition thereto (Doc. No. 271). For the reasons below, the Motion to Quash is DENIED. An Order follows.

**I. BACKGROUND**

The facts of this dispute are well known to the parties and it is unnecessary to outline them extensively here. It suffices to say that despite its apparent efforts, ITOCHU has been largely unable to satisfy the judgment it obtained against Devon last year. In aid of these efforts, ITOCHU has issued subpoenas to nine banks seeking information about accounts allegedly owned by Devon and related parties. At present, the banks have raised no objections to the subpoenas. In the instant Motion however, Devon asks this Court to quash or modify the subpoenas because it claims they (1) improperly seek records relating to Nance DiRocco, (2) improperly

1

seek records relating to retirement assets not subject to execution, and (3) are unnecessarily excessive and duplicative.

**II. STANDARD OF REVIEW**

As a general matter, district courts are given "significant discretion when resolving discovery disputes." First Sealord Sur. v. Durkin & Devries Ins. Agency 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion.").

The scope of discovery in civil suits is controlled by Federal Rule of Civil Procedure 26, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Generally, the scope of discovery is very broad, though it "is not unlimited and may be circumscribed." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999). Among other things, discovery can be limited "for good cause to protect a person from embarrassment, oppression, or harassment." Caisson Corp. v. Cnty. W. Bldg. Corp., 62 F.R.D. 331, 333 (E.D. Pa. 1974); see Fed. R. Civ. P. 26(b)(2)(C).

Discovery in aid of execution is similarly broad, and is controlled by Rule 69. In relevant part, that rule states that "[i]n aid of the judgment or execution, the judgment creditor ...

may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). This rule allows the "judgment creditor ... freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." Caisson, 62 F.R.D. at 334. As with general civil discovery, this is not unlimited, and "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons." Id.

Rule 45 provides the specific rules for discovery directed at nonparties. Relevant here is subsection (d)(3), which requires the court to quash or modify a subpoena "if it requires disclosure of privileged or other protected matter, if it risks unfair prejudice to persons who are the subject of a subpoena's commands, or subjects a party to an undue burden." First Sealord, 918 F. Supp. 2d at 382 (internal quotation marks and citations omitted); Fed. R. Civ. P. 45(d)(3)(A). Additionally, the rule allows a court to quash or modify a subpoena that requires disclosure of confidential business information or an unretained expert's opinion. Fed. R. Civ. P. 45(d)(3)(B).

As with all discovery, the subpoenaing party "bears the initial burden of demonstrating the requested discovery is relevant," as defined by Rule 26. First Sealord, 918 F. Supp. 2d at

3

382. If relevance is shown or apparent, the burden then shifts to the challenging party to either contest relevancy or show that the information sought falls within subsection (d)(3) of Rule 45. See Id. at 383; In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D. Pa. 2014); Fed. R. Civ. P. 45(d)(3). This latter burden is "'particularly heavy to support a motion to quash as contrasted to some more limited protection' such as a protective order." First Sealord, 918 F. Supp. 2d at 383 (quoting Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., CIV 10-MC-222, 2011 WL 239655, at *3 (E.D. Pa. Jan. 25, 2011)). When assessing the parties' respective positions, the court is required to "balance several competing factors: '(1) relevance, (2) need, (3) confidentiality, and (4) harm.'" Id. (quoting Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002)).

**III. ANALYSIS**

    **A. Standing**

As a threshold matter, Devon cannot challenge the subpoenas unless it has standing to do so. "Generally, 'a party does not have standing to quash a subpoena served on a third party.'" Id. at 382 (quoting Thomas v. Marina Assocs., 202 F.R.D. 433, 434 (E.D. Pa. 2001)). "An exception to this rule permits a party to move to quash when it 'claims some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty.'"

4

Id. (quoting Davis v. Gen. Accident Ins. Co. of Am., No. 98-4736, 1999 WL 228944, at *2 (E.D. Pa. April 15, 1999)).

In similar factual contexts, courts have generally found that "[p]ersonal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information." Ace Hardware Corp. v. Celebration Ace Hardware, LLC, No. 09-cv-66, 2009 WL 2753197, at *1 (D. Del. Aug. 28, 2009); see also Catskill Dev., LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 92-93 (S.D.N.Y. 2002)(finding that defendant had standing to challenge subpoena of its financial records directed at nonparty bank). Because the subpoenas request personal financial information of the judgment debtors, Devon has standing to challenge them.

**B. Nance DiRocco**

ITOCHU's subpoenas ask for, among other things, records relating to accounts held by Dr. Bennett's wife, Nance DiRocco. We understand Devon's objections to these requests to be twofold. Primarily, Devon argues that the subpoena requests violate this Court's March 18, 2014 Order which ordered Devon to produce documents "related to all assets, monies, and property held by Dr. Bennett, or by Dr. Bennett and Nance DiRocco as tenants by the entirety." Doc. No. 247 at 2. This objection is unavailing. Though Devon appears to believe that the Order limited discovery and production to *only* those entirety estates, that interpretation

5

belies the plain text. The Order simply commanded Devon to produce documents relating to those estates, it said nothing about discovery into Ms. DiRocco's other assets.

Additionally — though the Motion does not make this entirely clear — Devon appears to object to the relevancy of these requests based on the fact that Ms. DiRocco is not a judgment debtor in this action. Doc. No. 268 at 2, 5. However, the law is clear that discovery into the assets of a nonparty is "permitted where the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets." Strick Corp. v. Thai Teak Prods. Co., 493 F. Supp. 1210, 1218 (E.D. Pa. 1980). The relationship between Dr. Bennett and Ms. DiRocco is clearly sufficient to raise such doubts. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Van Waeyenberghe, 148 F.R.D. 256, 257 (N.D. Ind. 1993) ("[I]t should be beyond question that a judgment creditor is allowed to ask a judgment debtor for asset and financial information relating to the debtor's spouse or other family members."); Andrews v. Raphaelson, 5:09-CV-077-JBC, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009) ("Such information is relevant as it may lead to the discovery of marital assets out of which the judgment may be recovered, or to money or property that may have been transferred to the spouse to evade creditors.").

Additionally, there is no evidence here that ITOCHU's requests

are being used as "a means of harassment" of Devon, Ms. DiRocco, or the subpoenaed parties. See Caisson, 62 F.R.D. at 334. Rather, ITOCHU has raised legitimate concerns about the propriety of asset transfers from Devon to Ms. DiRocco. See Doc. No. 271 at 9-10. Discovery into her assets is thus plainly relevant to its execution efforts and does not run afoul of this Court's rulings or the federal rules.

### C. Retirement Accounts

In a similar relevance argument, Devon also requests modification of the subpoenas on the ground that they seek information about retirement accounts, which it claims are exempt from Execution. Doc. No. 268 at 5-6. This argument also falls short. While it may ultimately be the case that these assets are not subject to *execution*, that does not mean that information about them is protected from *discovery*. See 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3014 (2d ed. 2014) ("The judgment creditor is allowed discovery to find out about assets on which execution can issue *or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution*.") (emphasis added); Caisson, 62 F.R.D. at 334 ("All agree that the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor."). As is the case with Ms. DiRocco's accounts, ITOCHU has questioned whether asset transfers into these allegedly-

protected retirement accounts were proper. We will allow ITOCHU to examine whether this is in fact true. The question of whether ITOCHU can execute on the accounts is reserved for another day.

### D. Duplicative or Excessive Requests

Devon also requests that the subpoenas be quashed or modified because it claims they seek "excessive information unlikely to yield discovery in aid of execution." Doc. No. 268 at 6. Devon argues that since it has already provided ITOCHU with bank statements and other financial records, the requests to the nine banks are only useful to "conduct an audit" of those records. Id. at 6. But of course this is exactly what ITOCHU is attempting to do. While Devon claims that it does not have the funds to satisfy the judgment, ITOCHU argues that Devon has not provided a complete picture of its finances and is trying to hide its assets through an intricate system of asset transfers. See Doc. No. 271 at 2-3. In an attempt to untangle this web, ITOCHU has hired a forensic accountant and subpoenaed records from a variety of parties. Id. Discovery of Devon's bank accounts and financial records is plainly relevant to these efforts, and is a proper form of post-judgment discovery. See generally 12 Wright & Miller § 3014 ("The scope of [post-judgment] examination is very broad, as it must be if the procedure is to be of any value.").

Devon also claims that the subpoenas seek information and documents that have already been provided to ITOCHU. Doc. No. 268

at 6-7. Devon supports this argument merely by pointing to the volume of documents it has already produced. Id. at 3, 7. But while the subpoenas are of course likely to yield some duplicative documents, they also seem likely to produce new information as well. ITOCHU has adequately alleged — with support from its forensic accountant and discovery counsel — that Devon's prior productions were not comprehensive. Doc. No. 271 at 6-7 & Exs. A, B. If Devon is unwilling to produce sufficient documentation, ITOCHU has the right to discover and examine Devon's assets through subpoenas to third parties.

### E. Costs

Finally, Devon requests that if the subpoenas are not modified or quashed, ITOCHU should be required to bear the costs of discovery. Doc. No. 268 at 6. Devon claims that "the cost of analyzing the subpoenaed documents in attorneys fees and expert fees is likely to be very high, and it would not be fair to shift the cost of the proposed discovery to Devon, when the cost is out of proportion to any conceivable benefit." Id.  As Devon itself will incur no costs in the production or review of these documents, we presume that Devon is referring here to the costs ITOCHU will incur analyzing the documents, which it will likely seek to recover from Devon at a later date.

Devon's request is premature. The question of whether ITOCHU will be permitted to recoup these costs from Devon has not yet been

presented to this Court, and we see no reason why it needs to be decided at this time.

**IV. CONCLUSION**

    For the foregoing reasons, Devon's Motion to Quash is DENIED.